Daniel B. Beck, Esq. (SBN: 63865)
Mahsa Gholami, Esq. (SBN: 235634)
BECK LAW, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403
Telephone:   (707) 576-7175
Facsimile:    (707) 576-1878

Attorneys for Plaintiffs,
Thomas Knowles and Thomas Hicks

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

THOMAS KNOWLES and THOMAS HICKS,

Plaintiffs,

v.

PACIFIC GAS & ELECTRIC COMPANY,
DEANNA RADFORD, and DOES 1-20.

Defendants.

Case No.:   CV-08-1211-TEH

**PLAINTIFFS' OPPOSITION TO
DEFENDANT PACIFIC GAS AND
ELECTRIC'S MOTION TO VACATE
ARBITRATOR'S INTERIM AWARD
AND TO STAY ARBITRATION;
MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF
OPPOSITION; DECLARATION OF
MAHSA GHOLAMI IN SUPPORT OF
OPPOSITION; PROPOSED ORDER**

Date: April 7, 2008
Time: 10:00 a.m.
Dept.: 12, 19th Floor
Judge: Hon. Thelton E. Henderson

i

**TABLE OF AUTHORITIES**

Page

**Federal Cases:**

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers,*
(1968) 390 U.S. 557............................................................................................. 6

*Beneficial Nat. Bank v. Anderson,* (2003) 539 U.S. 1............................................. 6

*Brabham v. A.G. Edwards & Sons, Inc.* (5th Cir. 2004) 376 F.3d 377..................... 3

*Collins v. DR Horton Inc.* (9th Cir. 2007) 505 F.3d 874........................................ 3

*Daughtery v. Wash. Square Sec., Inc.* (2003, WD Pa) 274 F Supp. 2d 681............... 3

*Decicco v. Colombo* (2002, SD NY) 234 F. Supp. 2d 320....................................... 3

*DeCoe v. Gen. Motors Corp.* (6th Cir. 1994) 32 F.3d 212.................................. 6, 7

*Duke v. Crop Growers, Inc.* (1999, SD Tex) 70 F. Supp. 2d 711............................. 3

*Fox v. Parker Hannifin Corp.* (6th Cir. 1990) 914 F.2d 795.................................. 6

*French v. Merrill Lynch, Pierce, Fenner & Smith Inc.* (9th Cir. 1986) 784 F.2d 902........ 3

*George Day Construction Co, Inc. v. United Brthd* (9th Cir. 1984) 722 F.2d 1471.......... 3, 4

*Hoffman v. Cargill Inc.* (8th Cir. 2001) 236 F.3d 458........................................... 4

*Lingle vs. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399.......................... 6

*Livadas v.Bradshaw,* 512 U.S. 107, 124 (1994)................................................. 6, 7

*Maldonado v. Harris* (9th Cir. 2004) 370 F.3d 945....................................... 12, 13

*Oakwood Mobile Homes, Inc. v Stevens* (2002, SD W Va) 204 F Supp 2d 947............... 8

*San Martine Compania De Navegacio, S.A. v. Saguenay Terminals Ltd.*
(9th Cir. 1961) 293 F.2d 796.................................................................................. 4

*Smith v. Amedisys Inc.,* (2002) 298 F3d 434..................................................... 14

*United Steelworkers of America v Enterprise Wheel & Car Corp.* (1960) 363 US 593....... 10

*Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993............................................ 7


**State Cases:**

*Allan v. Snow Summit, Inc.* (1996) 51 CA4th 1375............................................17

*Bionghi v. Metropolitan Water Dist. of So. Calif.* (1990) 70 CA4th 1358.................... 16

*Bono v. David* (2007) 147 Cal. App. 4th 1055..................................................... 9

*Bowman v. Santa Clara* (1957) 153 CA2d 707............................................... 15, 16

*Buckhorn v. St. Jude Heritage Med. Group* (2004) 121 Cal. App. 4th 1401.................. 9

*Buckner v. A. Leon & Co.* 204 Cal.225............................................................. 15

*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336............................................ 17

*Casey v. Proctor* (1963) 59 C2d 97................................................................. 18

*Coast Plaza Doctors' Hosp. v. Blue Cross of California* (2000) 83 Cal. App. 4th 677...... 9

*Crawford v. France* 219 Cal. 439.................................................................. 15

*Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730........... 9

*Crowley v. Katleman* (1994) 8 Cal.4th 666........................................................ 12

*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal. App. 4th 547....................... 9

*Engineers & Architects Assn. v. Community Development Dept.*
(1994) 30 Cal. App. 4th 644......................................................................... 9

*Esbensen v. Userware, Int'l, Inc.* (1992) 11 CA4th 631......................................... 17

*Gibson v. De La Salle Institute* 66 Cal.App.2d 609............................................... 16

*Graham v. Scissor-Tail, Inc.* 28 Cal.3d 807...................................................... 17

*Hayter Trucking, Inc. v. Shell Western E & P, Inc.* 18 CA4th 1................................ 17

*In re Tobacco Cases I, JCCP 4041* (2004) 124 Cal.App.4th 1095.............................. 9

*Jordan v. Guerra*, 23 Cal.2d 469.................................................................. 18

*Lindsay v. Mack* 5 Cal.App.2d 491................................................................. 15

*Mairo v. Yellow Cab Co.*, 208 Cal.350........................................................... 18

*Masterson v. Sine* (1968) 68 C2d 222............................................................. 16

*M. G. Chamberlain & Co. v. Simpson*, 173 Cal.App.2d 263.................................... 18

*Medical Operations Management, Inc. v. Nat'l Health Laboratories, Inc.*
(1986) 176 Cal.App.3d 886.......................................................................... 16

*Meyer v. Haas*, 126 Cal. 560...................................................................... 18

*Moncharsh v. Heily & Blase* (1992) 3 Cal. 4th 1................................................. 8

*Morey v. Vannucci* (1998) 64 CA4th 904.......................................................... 16

*Morris v. Blank* (2001) 94 Cal. App. 4th 823................................................. 12, 13

*Pacific State Bank v. Greene* (2003) 110 CA4th 375............................................. 16

*Phillips v. Western Pac. R.R. Co.* (1971) 22 Cal. App. 3d 441.................................. 13

*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal. 4th 307..............................................8

*Raynale v. Yellow Cab Co.*, 115 Cal. App. 90.............................................18

*Stockburger v. Dolan* 14 Cal.2d 313..............................................15

*Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718......................................16

*Wulfjen v. Dolton*, (1944) 24 Cal.2d 891............................................13

**Federal Statutes:**

29 U.S.C. § 185(a) *et seq* ...............................................6

9 U.S.C. § 10 *et seq*...............................................3

9 U.S.C. § 1 *et seq*...............................................3

9 U.S.C. § 9 *et seq*...............................................3

**State Statutes:**

CA Code Civ. Proc. § 1281...............................................8, 9

CA Civil Code § 1668...............................................14

CA Civil Code § 1542...............................................14, 17

COMES NOW PLAINTIFFS THOMAS KNOWLES AND THOMAS HICKS'
OPPOSITION TO DEFENDANT PACIFIC GAS AND ELECTRIC'S MOTION TO VACATE
ARBITRATOR'S INTERIM AWARD AND TO STAY ARBITRATION.

## I.  STATEMENT OF FACTS

Plaintiffs were employees of Defendant PG & E.  As discussed in detail in Plaintiffs'
Complaint (and Amended Complaint in Case Number C 07-2284), a divestiture occurred in
1999, where the California Public Utility Commission placed an obligation on Defendant PG &
E to have a two year Operation and Maintenance period (hereinafter called "O & M period").
During this time, Defendant PG & E's expertise were to be made available to whoever purchased
the power plant.  Defendant PG & E created a benefits package for all power generation
employees affected by the divestiture.  The benefits package included a sixty (60) month right to
preferential re-employment with Defendant PG & E.  Plaintiffs were affected by the divestiture.
They were promised the 60 month right to re-employment and because of such promise, they
entered into a Severance Agreement.  Further, and because of the promised 60 month right to re-
employment, Plaintiffs did not exercise their right to re-employment until shortly before the 60
months had ended.

Plaintiffs detrimentally relied on their promised 60 month right to preferential re-
employment.  Defendant PG & E made this promise to them to induce them to accept the
severance agreement and work at the Geysers.  Plaintiffs have already, through their own
investigation and discovery, obtained statements from PG & E employees and supervisors, which
support and confirm such oral agreement by Defendant PG & E.

## II.  PROCEDURAL BACKGROUND

Plaintiffs THOMAS KNOWLES and THOMAS HICKS (hereinafter collectively called
"Plaintiffs") filed an action for breach of oral contract.  Following such action, Defendant
PACIFIC GAS AND ELECTRIC (hereinafter called "Defendant PG & E") declared that
Plaintiffs' claims were all subject to an arbitration clause contained in the parties' Severance
Agreements.  In fact, Defendant PG & E notified Plaintiffs (1) that their only recourse was
arbitration and (2) that if they did not dismiss their action and agree to arbitrate their dispute,

*Knowles & Hicks v. PG & E, et al.*                              1
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

Defendant PG & E would file a motion to compel arbitration. Defendant PG & E even sent copies of the executed Severance Agreements to further substantiate their unequivocal and express conclusion that all of the claims stated in Plaintiffs' complaint were bound by an arbitration clause and were based on the Severance Agreements that the Plaintiffs entered into.

Following numerous communications from Defendant PG & E regarding this, Plaintiffs dismissed their action without prejudice and the parties chose an arbitrator. Once arbitration began, Defendant PG & E changed their tune. Suddenly, they began claiming that Plaintiffs' claims had nothing to do with the Severance Agreement, that the parties were not bound by an arbitration clause, and that Plaintiffs' claims were preempted by Section 301 of the Labor Management Relations Act. Plaintiffs contend that the oral agreement they claim was breached was part of the Severance Agreements they executed, and that they justifiably relied on such oral agreement in order to enter into the Severance Agreements. Plaintiffs contend that the parties are bound by the arbitration clause and request that arbitration be permitted in this case.

Defendant PG & E attempted to dismiss the action in arbitration based on Section 301's preemption law. The arbitrator reviewed legal arguments and case law supplied by both parties. The arbitrator also held a hearing on the issues, which lasted several hours. Finally, the arbitrator requested both parties to submit supplemental pleadings on the issue of whether the action was preempted or arbitrable. Following such supplement pleadings, and based on the totality of the circumstances and facts, the arbitrator accurately held that the issues were arbitrable and were not preempted by Section 301. Defendant PG & E had the opportunity to present all case law and arguments in support of preemption. Defendant PG & E did so, and despite their presentation of arguments, the arbitrator still found that the action was not preempted. Now that they have lost the issue, Defendant PG & E is asking this court to simply toss out the arbitrator's interim award. Suddenly, and only because Defendant PG & E did not get what they wanted, they are claiming absurd allegations that Judge Norman Brand, the arbitrator, "acted in manifest disregard of the law." Judge Brand acted appropriately and reasonably under the circumstances and as discussed below, Plaintiffs respectfully ask that this Court deny Defendant PG & E's motion to vacate the arbitrator's interim award and deny Defendant PG & E's request that the arbitration be stayed.

*Knowles & Hicks v. PG & E, et al.*     2
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

# III. LEGAL ARGUMENT

A. <u>The Arbitrator Did Not Act In Manifest Disregard Of The Law When He Found That The Claims For Breach Of Oral Agreement And Implied Covenant Were Arbitrable.</u>

9 U.S.C. § 10 states:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration:
  (1) where the award was procured by corruption, fraud, or undue means;
  (2) where there was evident partiality or corruption in the arbitrators, or either of them;
  (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
  (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Defendant PG & E claims that the arbitrator's interim award should be vacated because the arbitrator acted with "manifest disregard of the law." [*see* 9 U.S.C. § 9; *see also Decicco v Colombo* (2002, SD NY) 234 F Supp 2d 320; *see also Duke v Crop Growers Ins., Inc.* (1999, SD Tex) 70 F Supp 2d 711]

When parties move to confirm or vacate arbitration award, court's function in confirming or vacating commercial arbitration award is *severely limited*; if parties have clearly agreed to arbitrate, courts will set aside arbitral verdicts only in "very unusual circumstances," and there is "strong presumption" in favor of arbitration award under Federal Arbitration Act, 9 USCS §§ 9, 10. [*see Daugherty v Wash. Square Sec., Inc.* (2003, WD Pa) 271 F Supp 2d 681; emphasis added]

The manifest disregard test is a two prong test: [1] the arbitrator must have appreciated the existence of a clearly governing principle but decided to ignore it or pay no attention to it and [2] the arbitrator's disregard of the law resulted in significant injustice. [*see Brabham v. A.G. Edwards & Sons, Inc.* (5th Cir. 2004) 376 F.3d 377, 382; *see also Collins v. DR Horton Inc.* (9th Cir. 2007) 505 F.3d 874, 889] In *Collins*, the court only overturned the arbitrator's award partially because the arbitrator had attempted to include non-parties to the contract as being bound by the award; the court said this exceeded the arbitrator's authority.

An arbitrator's award will be upheld *even in the face of an ambiguous decision or erroneous factual findings or legal conclusions.* [*see George Day Construction Co, Inc. v. United Brthd* (9th Cir. 1984) 722 F.2d 1471, 1477; *French v. Merrill Lynch, Pierce, Fenner & Smith Inc.* (9th

*Knowles & Hicks v. PG & E, et al.*                                                3
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    Cir. 1986) 784 F.2d 902, 906 (*quoting San Martine Compania De Navegacio, S.A. v. Saguenay*

2    *Terminals Ltd.* (9th Cir. 1961) 293 F.2d 796, 800; emphasis added]. The district court's

3    authority is not to re-try the already-arbitrated matter. The court is not to "second guess" the

4    arbitrator when the parties have delegated the decision-making to an arbitrator. [*see George Day*,

5    *supra*, at 1477; *see also Hoffman v. Cargill Inc.* (8th Cir. 2001) 236 F.3d 458, 461-462]

6        In order for the Court to vacate the arbitrator's interim award, it must conclude that

7    Arbitrator Brand acted in "manifest disregard of the law." Defendant PG & E has failed to

8    demonstrate that Arbitrator Brand has acted in manifest disregard of the law by finding that some

9    of Plaintiffs' claims are arbitrable. In fact, Arbitrator's Brand's conduct in the arbitration

10   evidences a proper and well thought out ruling. Defendant PG & E was the one that initially

11   proposed arbitration in response to Plaintiffs' complaint. Not only did they "propose"

12   arbitration, but they insisted that arbitration was the only remedy that Plaintiffs had. They also

13   threatened to compel arbitration if Plaintiffs did not dismiss their federal action and pursue

14   arbitration. Once in arbitration, Defendant PG & E changed their tune. They filed a Motion to

15   Dismiss based, in part, on Section 301 of the Labor Management Relations Act. Both parties

16   submitted arguments with regards to the issue of preemption and whether the claims were

17   arbitrable. After reviewing the moving papers and doing his own research on this issue,

18   Arbitrator Brand listened to several hours of oral arguments. During the oral arguments, he

19   asked both sides questions and challenged their arguments.

20       Following all of that, Arbitrator Brand insisted on further written arguments on the issue of

21   Section 301 and preemption. After reviewing all of the supplemental arguments and case law

22   from the parties, as well as reviewing the previously submitted documents and arguments from

23   the hearing, Arbitrator Brand concluded that some of Plaintiffs' claims *were* arbitrable. Even

24   after Defendant PG & E advised Arbitrator Brand of the federal court's ruling on the issue,

25   Arbitrator Brand still made an independent decision. Just because such decision does not fit into

26   Defendant PG & E's plan does not mean that it is automatically void or that the arbitrator "must

27   be acting with manifest disregard of the law" if he dared to disagree with Defendant PG & E.

28   There is absolutely no support for Defendant PG & E's contention that the arbitrator acted with

     manifest disregard of the law in reaching his interim award. Plaintiffs respectfully request that

     the Court deny Defendant PG & E's request to vacate the arbitrator's interim award since

*Knowles & Hicks v. PG & E, et al.*                4
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    Defendant PG & E has failed to demonstrate the requisite evidence that would support vacating

2    the award.

3

4     B.   <u>The Arbitrator Properly Concluded That Plaintiffs' Claims Were Not Preempted By</u>
       <u>Section 301 Of The Labor Management Relations Act</u>.

5

6      Plaintiffs were not initially given a 60 month right to preferential re-employment with PG &

7    E. After much negotiation, Defendant PG & E orally agreed to provide Plaintiffs with such

8    right. Only then did Plaintiffs enter into Severance Agreements with PG & E. The Severance

9    Agreements had a specific arbitration clause and make arbitration the exclusive remedy. Even

10   after Plaintiffs filed their breach of contract claims, Defendant PG & E insisted that the parties

11   were bound by arbitration and that if Plaintiffs did not voluntarily dismiss their civil action and

12   pursue arbitration, they would file a Motion to Compel Arbitration. Defendant PG & E even

13   forwarded copies of the Severance Agreements to Plaintiffs' counsel in order to further confirm

14   that the parties were bound by the arbitration clause.

15      Defendant PG & E has done everything possible to spin this case out of control, pulling

16   every convenient argument that they can to get rid of this action. They know that unless they can

17   procedurally dismiss this action, they do not have a shot at success since Plaintiffs have

18   numerous witnesses and evidence confirming such oral agreement. After Defendant PG & E

19   insisted that the breach of oral agreement alleged in Plaintiffs' complaint was part of the

20   Severance Agreements and bound by the arbitration clause, Defendant PG & E changed their

21   tune. They decided to file a Motion to Dismiss based on Section 301 of the LMRA. After a

22   review of the moving papers, the Federal Court found that such causes of action were preempted

23   by Section 301. The Federal Court granted leave to amend for Plaintiffs to re-allege their claims

24   under Section 301.

25      Defendant PG & E filed the same type of Motion to Dismiss based on Section 301 of the

26   LMRA in arbitration. Arbitrator Norman Brand reviewed numerous pleadings, heard several

27   hours of oral arguments and even reviewed supplement pleadings on the issue of Section 301

28   preemption. After all of this, and despite being informed of the Federal Court's ruling,

*Knowles & Hicks v. PG & E, et al.*       5
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    Arbitrator Brand found that the causes of action were not all preempted by Section 301 and were,

2    in fact, arbitrable.  Arbitrator Brand did not act in manifest disregard of the law, nor were his

3    findings improper.  The parties had every opportunity, including supplemental pleadings, to put

4    forward their arguments.

5    Section 301(a) of the Labor-Management Relations Act (LMRA) provides that the federal

6    district courts have plenary jurisdiction, without regard to citizenship or amount in controversy,

7    over "[s]uits for violation of contracts between an employer and a labor organization

8    representing employees." [29 U.S.C. § 185(a)]   Defendant PG & E argues that the Supreme

9    Court has recognized that the "unusually powerful pre-emptive force of § 301," [*Beneficial Nat.*

10   *Bank v. Anderson*, (2003) 539 U.S. 1, 7] places it in the small category of statutes that "not only

11   pre-emp[t] state law but also authoriz[e] removal of actions that sought relief only under state

12   law." [Ibid., *quoting Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace*

13   *Workers*, (1968) 390 U.S. 557]   What Defendant PG & E fails to mention is that Section 301's

14   sphere of complete pre-emption extends to state law claims that are "SUBSTANTIALLY

15   DEPENDENT on analysis of a collective bargaining agreement."   It does <u>not</u> reach claims that

16   only "tangentially involve CBA provisions." [*see Fox v. Parker Hannifin Corp.* (6th Cir. 1990)

17   914 F.2d 795, 799-800; *see also DeCoe v. Gen. Motors Corp.* (6th Cir. 1994) 32 F.3d 212, 216

18   ("[S]ection 301 preempts state law rules that *substantially* implicate the meaning of collective

19   bargaining agreement terms."); *Livadas v.Bradshaw*, 512 U.S. 107, 124 (1994), emphasis added]

20   > [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one
21   > hand, and state law, on the other, would require addressing precisely the same set of
22   > facts, as long as the state-law claim can be resolved without interpreting the agreement
23   > itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.
24   > [*DeCoe, supra,* at p. 216]

22   Section 301 will *not* preempt a claim that involves rights and obligations that are

23   independent of a Collective Bargaining Agreement.  The U.S. Supreme Court has held that a

24   state law remedy for retaliatory discharge is independent of a Collective Bargaining Agreement,

25   and thus not subject to preemption, if its resolution involves purely factual questions pertaining

26   to the conduct of the employee and the conduct and motivation of the employer. [*see Lingle vs.*

27   *Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399,407]

28   <u>Despite Defendant's "matter of fact" argument, LMRA does not preempt every public</u>

<u>policy claim brought by an employee covered by a collective bargaining agreement; a claim is</u>

*Knowles & Hicks v. PG & E, et al.*                    6
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    not preempted if it poses no significant threat to the collective bargaining process and furthers

2    state interest in protecting public transcending employment relationship. [*see Young v. Anthony's*

3    *Fish Grottos, Inc.*, 830 F.2d 993] Defendant PG & E's Severance Agreements with Plaintiffs,

4    although dealing with their employment terms, specifically did not call for Section 301 analysis

5    since Defendant PG & E is the one that included an arbitration clause in the Severance

6    Agreements.

7        The Court has stated that "...Section 301 cannot be read broadly to pre-empt non-

      negotiable rights conferred on individual employees as a matter of state law" [*see Livadis vs.*

8    *Bradshaw* (1994) 512 U.S. 107,123] "The bare fact that the Collective Bargaining Agreement

9    will be *consulted* in the course of the state law litigation does not require the claim to be

10    extinguished." [*Id.*, at p. 124, emphasis added] The court applies a two-step approach to

11    deciding whether § 301 pre-emption applies to a state-law claim. [*see DeCoe, supra*, at p. 216]

12    First, we examine whether proof of the state law claim requires interpretation of collective

13    bargaining agreement terms. Second, we ascertain whether the right claimed by the plaintiff is

14    created by the collective bargaining agreement or by state law. If the right both arises from state

15    law and does not require contract interpretation, then there is no preemption. [*see DeCoe, supra*,

16    at p. 216]

          Here, Arbitrator Brand reasonably concluded that based on the case law and arguments,

17    Plaintiffs' claims are not substantially dependent on analysis of a collective bargaining

18    agreement. He reasonably found that Plaintiffs entered into Severance Agreements after

19    justifiably relying on an oral agreement to provide a 60 month right to preferential re-

20    employment. That is not an improper outcome since case law supports such outcome and even

21    Defendant PG & E initially claimed that Plaintiffs' claims were part of a Severance Agreement,

22    not a collective bargaining agreement. Plaintiffs' oral agreement was not negotiated by their

23    union, nor was it negotiated pursuant to a collective bargaining agreement. It was just one of the

24    benefits that were also contained in the collective bargaining agreement. Not every claim is

25    preempted, and in this case, the arbitrator reasonably concluded that Plaintiffs' claim for breach

26    of oral agreement was not preempted.

27

28

*Knowles & Hicks v. PG & E, et al.*       7
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

C.  Defendant PG & E Expressly Confirmed That Arbitration Was The Only Recourse For Plaintiffs And Defendant PG & E Made Such Contention After Reviewing Plaintiffs' Complaint For Breach Of Oral Agreement And Implied Covenant.

Defendant PG & E expressly and unequivocally confirmed that Plaintiffs' claims were part of their Severance Agreements and that Plaintiffs' exclusive remedy was arbitration since the Severance Agreements contained a written arbitration clause.  A true and accurate copy of several communications in this regard are marked as **EXHIBIT A,** and incorporated by reference herein.  Defendant PG & E has waived any challenge to the arbitration by actively seeking arbitration in the first place. [*see Oakwood Mobile Homes, Inc. v Stevens* (2002, SD W Va) 204 F Supp 2d 947]

Defendant PG & E even believed and commanded that arbitration was the exclusive remedy; it is only now that they are changing their tune.  In fact, they would argue anything to get rid of this case, and if preemption did not work, they would probably turn around and claim that this was part of the Severance Agreement and because it was not a written term of the agreement, Plaintiffs are not entitled to relief.  Based on the attachments and the procedural history of this case, it is clear that Defendant PG & E confirmed that arbitration was the appropriate and exclusive remedy for Plaintiffs.  They did this after reviewing Plaintiffs' complaint and the causes of action contained therein.  Therefore, they should not be permitted to change their mind simply to avoid the claims altogether.  They have waived any such argument.

D.  The Arbitration Agreement Between The Parties Was In Writing.

Plaintiffs entered into written Severance Agreements.  These Severance Agreements had an arbitration clause. [See Exhibit 3 of Declaration of Susan T. Kumagai in Support of Pacific Gas and Electric Company's Motion to Vacate Arbitrator's Interim Award and to Stay Arbitration.] Private arbitration is a matter of agreement between the parties and is governed by contract law [*see Platt Pacific, Inc. v. Andelson* (1993) 6 Cal. 4th 307, 313; *see Moncharsh v. Heily & Blase* (1992) 3 Cal. 4th 1, 8]  A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable, and irrevocable, except on such grounds as exist for revocation of any contract [*see* Code Civ. Proc. § 1281].  If the contract provides for

*Knowles & Hicks v. PG & E, et al.*                                    8
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    arbitration under rules which specify that the arbitrator determines the existence, scope, or

2    validity of the arbitration agreement, then the arbitrator--not a court--makes the evaluation under

3    Code Civ. Proc. § 1281.2 [*see Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal. App. 4th

4    547, 557 (agreement for arbitration in accordance with AAA Commercial Arbitration Rules)].

5        The burden is on the party opposing arbitration to demonstrate that an arbitration clause

6    cannot be interpreted to require arbitration of the dispute [*see Bono v. David* (2007) 147 Cal.

7    App. 4th 1055, 1062; *Buckhorn v. St. Jude Heritage Med. Group* (2004) 121 Cal. App. 4th 1401,

8    1406; *Coast Plaza Doctors' Hosp. v. Blue Cross of California* (2000) 83 Cal. App. 4th 677, 686-

9    687]  Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved

10    in favor of sending the parties to arbitration [*see Buckhorn v. St. Jude Heritage Med. Group*

11    (2004) 121 Cal. App. 4th 1401, 1406; *Engineers & Architects Assn. v. Community Development*

12    *Dept.* (1994) 30 Cal. App. 4th 644, 652]

13        Arbitrator Brand reasonably found that the oral agreement was part of the Severance

14    Agreements, and therefore, they were arbitrable.  The California Legislature has "expressed a

15    strong public policy in favor of arbitration as a speedy and relatively inexpensive means of

16    dispute resolution…Consequently, courts will 'indulge every intendment to give effect to such

17    proceedings." [*see In re Tobacco Cases I, JCCP 4041* (2004) 124 Cal.App.4th 1095] "California

18    has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a

19    dispute are resolved *in favor of arbitration.*" [*Id.; see also Coast Plaza Doctors Hospital v. Blue*

20    *Cross of California* (2000) 83 Cal.App.4th 677, 686; emphasis added]  Whether or not

21    arbitration is appropriate is determined based upon the intentions of the parties. [*see Crowell v.*

22    *Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730, 734]

23        Here, the parties intended to arbitrate any disputes arising out of the Plaintiffs' Severance

24    Agreements.  The Agreements distributed their benefits, so additional benefits orally promised

25    should naturally fall under the arbitration clause since the parties intended to arbitrate disputes

26    regarding such benefits.  Plaintiffs were induced by the oral promises to enter into the written

27    Severance Agreements.  But for such oral promises, Plaintiffs would not have done so.

28

*Knowles & Hicks v. PG & E, et al.*        9
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    Furthermore, Defendant PG & E is the party that initially proposed arbitration, basing such

2    proposal in the arbitration clause that they now refute.  Plaintiffs initially filed suit in superior

3    court, alleging causes of action including breach of contract, fraud, malice and oppression.

4    Subsequently, Claimants dismissed their civil action (without prejudice) in superior court based

5    upon such representations and urging by Defendant PG & E that the parties' dispute was bound

6    by an arbitration clause.  Now, suddenly, Defendant PG & E is refuting the arbitrability of the

7    dispute, forcing Plaintiffs back to court, where they can pull another trick out of their hat to make

8    the action disappear.  Defendant PG & E cannot have it both ways.  They are attempting to twist

9    this case out of control and expend unnecessary funds by bullying former employees.  A true and

10   accurate copy of several communications confirming this was previously marked as Exhibit A.

11   The Severance Agreements and Defendant PG & E themselves have expressly confirmed that

12   Plaintiffs' claims are arbitrable.  Currently, the parties are awaiting a ruling from the Federal

13   Court regarding Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.  If the Court

14   grants such motion, then Plaintiffs will only have the arbitration left.  Arbitrator Brand properly

15   found that such claims were arbitrable, and therefore, Plaintiffs ask that the Court deny

16   Defendant PG & E's request to stay the arbitration.

17   Defendant PG & E claims that because the Federal Court found that this was a CBA action,

18   then arbitration is inapplicable.  However, even the CBA states that disputes are to be arbitrated.

19   The CBA that Defendant PG & E so heavily relies upon instructs arbitration as a means to

20   resolve disputes.  A true and accurate copy of such page from the CBA is marked as **EXHIBIT**

21   **B**, and incorporated by reference herein.  Under *United Steelworkers of America v Enterprise*

22   *Wheel & Car Corp.* [(1960) 363 US 593], the Court held that under a collective bargaining

23   contract calling for arbitration of differences as to meaning and application of contract, question

24   of interpretation of contract is for arbitrator; it is the arbitrator's construction which was

25   bargained for, and so far as arbitrator's decision concerns construction of contract courts have no

26   business overruling him because their interpretation of contract is different from his; refusal of

27   courts to review merits of arbitration award is proper approach to arbitration under collective

28

*Knowles & Hicks v. PG & E, et al.*                                 10
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

bargaining agreement, since federal policy of settling labor disputes by arbitration would be undermined if courts had final say on merits of award.

E.  Defendant PG & E Should Not Be Permitted To Pick And Choose Which Rulings They Want And Try To Dismiss All Rulings That Are Not In Their Favor.

Even a quick glance at the procedural history of this case makes it evident that Defendant PG & E has done everything possible to avoid defending the merits of Plaintiffs' claims.  They know that there is overwhelming evidence and witness statements supporting Plaintiffs' claims of an oral agreement with Defendant PG & E.  Because they were successful in Federal Court, and were unsuccessful in the arbitration, they would just like the Court to simply ignore the arbitrator's interim award and accept the ruling that benefits them.  Had the arbitrator's award benefited them, they would never consider such motion.  According to Defendant PG & E, if any judge does not agree with them, then that judge must be wrong.  Further, a judge that disagrees with them must have acted with "manifest disregard" of the law.  Arbitrator Brand made a careful and well thought out ruling; he reviewed extensive written arguments from both parties, and listened to hours of oral arguments.  Still, he agreed that some of Plaintiffs' claims were arbitrable.  Defendant PG & E cannot simply ask that such ruling being thrown out because it does not please them.

F.  The Arbitrator Is Not Bound To Agree With The Federal Court Ruling Regarding Whether Plaintiffs' Claims Are Preempted.

The parties agreed to arbitration initially.  They forwarded moving papers to the arbitrator regarding preemption.  The arbitrator had jurisdiction to hear the dispute.

**Other Claims**

There is no merit to Respondent's claim I must dismiss the arbitration because a federal court dismissed (with leave to amend) a parallel federal lawsuit.  Absent a stay from the federal court, the arbitration must go forward.  None of Respondent's claims about the impropriety or impossibility of proving an oral agreement are a proper basis for dismissing the claim.  Finally, Respondent has failed to show the broad arbitration clause in the Severance Agreement and Release precludes hearing "implied in law" claims, such as the

*Knowles & Hicks v. PG & E, et al.*                    11
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1  alleged breach of covenant of good faith and fair dealing. [*see* Arbitrator's Interim Award,
2  page 10, which has been previously marked as Exhibit 13 of Declaration of Susan T.
3  Kumagai in Support of Pacific Gas and Electric Company's Motion to Vacate Arbitrator's
   Interim Award and to Stay Arbitration.]

4      It would be "manifest disregard of the law" *if* the arbitrator simply agreed with the
5  Federal Court and granted Defendant's Motion to Dismiss.  That is not what happened.
6  Knowing what the Federal Court ruled, and after hearing all of the evidence and case law, the
7  arbitrator made a proper ruling based on the totality of the arguments and case law.  This ruling
8  should not be overturned and Defendant PG & E has failed to meet the standard required to
9  vacate the arbitrator's award.

10
11      G.  The Arbitration Should Not Be Stayed.

12      Defendant PG & E decided to argue in two forums.  When Plaintiffs initially filed suit,
13  Defendant PG & E insisted and demanded that the action be arbitrated.  Once in arbitration,
14  Defendant PG & E changed their mind and decided that the action should be in federal court.  In
15  order to protect Plaintiffs' interests, Plaintiffs filed in federal court.  In the federal court, there is
16  a pending Motion to Dismiss.  The parties are properly before arbitration and a stay of the
17  arbitration proceedings would be unfair to Plaintiffs.  Plaintiffs have spent much time, money,
18  and energy arguing their claims in arbitration.  There is currently an arbitration date and
19  discovery cut-off dates.  Plaintiffs respectfully ask that the Court deny Defendant PG & E's
20  request to stay the arbitration proceedings.  Defendant PG & E should not be entitled to relief
21  when their bad faith and circular arguments are the reasons the parties are in two forums in the
   first place.

22      The *Crowley* case cited by PG&E is a malicious prosecution case and does not provide a
23  pertinent application of the rule to the facts in that case. [*see Crowley v. Katleman*, 8 Cal.4th 666
24  (1994)]  In *Maldonado v. Harris* [(9th Cir. 2004) 370 F.3d 945], the Court found that the primary
25  right theory was not violated.  "Because the primary rights involved in the two suits are different,
26  the causes of action are also different, and the judgment against Maldonado in the nuisance
27  action therefore does not bar any of his federal claims."  The case of *Morris v. Blank* [(2001) 94
28  Cal. App. 4th 823] supports the *Maldonado* decision.  In *Morris*, the original plaintiff, Morris,
   filed a negligence action against Blank in state superior court following a car accident.  While

*Knowles & Hicks v. PG & E, et al.*                    12
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

this suit was pending, Blank filed a negligence action in municipal court against Morris, which Blank was able to settle with Morris' insurer. Blank then went back to superior court and claimed that the settlement of the municipal court action barred the action Morris had initially filed. The trial court agreed and dismissed Morris' suit. The California Court of Appeal reversed, finding that claim preclusion did not bar Morris' superior court action because the causes of action were not identical: "Here, Morris' superior court litigation is on a different cause of action . . . involving separate and distinct torts, namely, Blank's negligence, from those at issue in Blank's municipal court case, namely, Morris' negligence" [*see Id.* at 678] *Morris* illustrates that, even though two suits involve the same nucleus of facts, they do not necessarily raise the same cause of action under California law. [*see Maldonado, supra* at p. 952]

Defendant PG & E can plead that the first adjudication, the arbitrator's award, bars the federal action. However, they cannot have their cake and eat it too. If they rely on the arbitration award as barring the federal claim, they are admitting the validity or at least viability of the arbitration decision. If that is so, the arbitrator's decision should stand since all parties recognize its validity/viability. Furthermore, Defendant PG & E cites *Wulfjen* as protecting defendants from vexatious litigation [*see Wulfjen v. Dolton*, 24 Cal.2d 891 (1944)]; however, *Defendant PG & E* forced the two forums to be brought against them. In arbitration, Plaintiffs are arguing breach of their severance agreement; in federal court, they are arguing breach of contract under their collective bargaining agreement.

It is important to note that there are exceptions to the primary right theory. "The rule against splitting is acknowledged by court decisions to be harsh as applied in some cases and consequently as to some situations approaches to the rule have been developed wherein causes of action should be viewed with flexibility to avoid a harsh result not intended by the basic principles of the rule as enunciated in the *Wulfjen* case" [*see Phillips v. Western Pac. R.R. Co.* (1971) 22 Cal. App. 3d 441, 444-445 (splitting permitted where insured needed to be joined in subrogation case where full scope of damages needed all parties, including insurer and insured)] An equitable argument can be made using the *Phillips* case, namely that "a harsh result" will be permitted if Defendant PG & E is permitted to vacate the arbitrator's award and dismiss the action in federal court. This leaves no recourse for Plaintiffs when it is Defendant PG & E that forced this dual litigation.

*Knowles & Hicks v. PG & E, et al.*          13
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1    Plaintiffs should not be barred from pursuing their arbitration action.  There has not been a

2    judgment on the merits in the federal action, and being just days away from a ruling on the

3    Motion to Dismiss, is not the appropriate time to stay the arbitration action.  The arbitrator found

4    that the breach of oral agreement cause of action is based on Severance Agreements by the

5    parties.  Defendant PG & E should not be able to forum shop and stay the forum that does not

6    agree with its claim.  The issues before the arbitrator are a separate and distinct proceeding and

7    should not be stayed.

8    H.  Defendant PG & E's Argument That The Severance Agreement Has A Release Of All
9        Claims Is Misinterpreted And Is An Issue For The Trier Of Fact.

10

11    The Severance Agreements' "release of all claims" clause is misinterpreted by Defendant PG

12    & E, since such interpretation would basically allow PG & E to not fulfill any of their promises,

13    without repercussion.  Defendant PG & E made oral promises to both Plaintiffs, promises that

14    they have elected not to keep.  The oral promises are part of the Severance Agreement and

15    Release.  Plaintiffs are disputing the oral promise made by Defendant PG & E, which induced

16    them to enter into the Agreements in the first place.  If they were not allowed to dispute this, then

17    Defendant PG & E could simply not fulfill any of their obligations and then argue that Plaintiffs

18    could not dispute their failure to fulfill their obligations because Plaintiffs have signed a "release

19    of all claims."  Such argument is nonsensical, unreasonable, and unjust.

20    Further, the release was not knowingly and voluntarily signed by Plaintiffs since it was

21    obtained under fraud and/or material mistake. [*see Smith v. Amedisys Inc.*, (2002) 298 F3d 434,

22    441] Plaintiffs were orally promised a 60 month right to preferential re-employment.  They

23    relied on such agreement and signed a Severance Agreement.  If Defendant PG & E had no

24    intention of ever fulfilling their obligations under the oral agreement and only made such

25    promise to influence Plaintiffs to enter into the Severance Agreements, then the release of all

26    claims is void.  Finally, public policy would not support such release of all future claims, as

27    Defendant PG & E is demanding.  CA Civil Code § 1668 states that "[a]ll contracts which have

28    for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or

      willful injury to the person or property of another, or violation of law, whether willful or

      negligent, are against the policy of the law."  Further, CA Civil Code § 1542 states that "[a]

      general release does not extend to claims which the creditor does not know or suspect to exist in

*Knowles & Hicks v. PG & E, et al.*                     14
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

1   his or her favor at the time of executing the release, which if known by him or her must have

2   materially affected his or her settlement with the debtor."

3       Here, Plaintiffs are not claiming new rights that they never had before. They are only asking

4   that Defendant PG & E follow through with the rights that Plaintiffs were previously promised.

5   Therefore, Defendant PG & E's argument that Plaintiffs have released any claims to pursue the

6   pending causes of action, are misplaced and misinterpreted. That is for the trier of fact to

7   determine, not a determination at this preliminary stage of the action.

8       Plaintiffs and Defendant PG & E entered into an oral agreement, wherein Defendant PG & E

9   promised to give each plaintiff a 60 month right to preferential re-employment. Plaintiffs

10  accepted the offer, and justifiably and detrimentally relied on the offer, and are now seriously

11  damaged by Defendant PG & E's failure to perform under the agreement. While it is true that

12  Plaintiffs entered into severance agreements with Defendant PG & E, they did so after being

13  induced to enter into the agreements because of Defendant PG & E's oral agreement to provide

14  re-employment. Plaintiffs did not assert their right to re-employment until shortly before the 60

15  month period had lapsed. Even when they initially contacted Defendant PG & E about such

16  right, Defendant PG & E confirmed that Plaintiffs *were* entitled to a 60 month right to re-employment.

17      Defendant PG & E's contention that the Severance Agreement and Release sets for the

18  entire agreement between the parties is erroneous. The parol evidence rule applies to writings

19  intended by the parties as a *final expression of their agreement*. "Where the written agreement is

20  incomplete (e.g., partly written and partly oral), the parol evidence rule does not bar extrinsic

21  evidence on the terms not covered in the written agreement or inconsistent therewith." [*Bowman
    v. Santa Clara* (1957) 153 CA2d 707, 711–712]

22          It has long been the rule that when the parties have not incorporated into an instrument all
            of the terms of their contract, *evidence is admissible to prove the existence of a separate
            oral agreement as to any matter on which the document is silent and which is not
            inconsistent with its terms*. [*Id.*, quoting from *Buckner v. A. Leon & Co.*, 204 Cal. 225,
            227 (buyer of grapes deemed to have agreed to furnish lug boxes pursuant to local
            custom; the writing was silent on that subject); *see also Crawford v. France*, 219 Cal.
            439, 443 (writing specified architect's fee as a percentage of construction cost but was
            silent as to latter; parol evidence competent to show agreed limit of cost of construction);
            *Stockburger v. Dolan*, 14 Cal.2d 313, 317 [oral understanding that lessee under oil lease
            would procure a zone variance, provable by parol evidence because not inconsistent with
            written portion which was silent on that subject]; *Lindsay v. Mack*, 5 Cal.App.2d 491,
            496-497 [parol evidence rule does not apply to a collateral agreement upon which the

*Knowles & Hicks v. PG & E, et al.*                    15
United States District Court Case No.:  CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

instrument is silent and which does not purport to affect the terms of the instrument]; *Gibson v. De La Salle Institute*, 66 Cal.App.2d 609, 631-632 (writings specified kinds, quantities and prices of wine sold but were silent as to such details as storage, place of delivery, transportation to shipping point, etc., which it was proper to show if governed by usage or if orally agreed)]. [*Bowman v. Santa Clara, supra* at p. 712, emphasis added]

In the instant case, the parties had not incorporated all of the terms of their agreement into the Severance Agreements.  No matter what argument the Court follows, whether we follow Defendant PG & E's contention about the time period that Plaintiffs had to pursue their right to re-employment, or we follow what Plaintiffs' assert to be their time period for their right to re-employment, such "right to re-employment" is completely silent in the Severance Agreements. Plaintiffs definitely had a right to re-employment.  The amount of time for such right is the dispute between the parties.  Evidence is therefore admissible to prove the existence of the parties' oral agreement since the Severance Agreements were silent on the time period for Plaintiffs' right to re-employment.  "As the trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of the contract." [*see Morey v. Vannucci* (1998) 64 CA4th 904, 912–913, quoting from *Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891-892] The court must then base its interpretation of the contract on the jury's findings.

Here, Plaintiffs are claiming that the Severance Agreements are ambiguous and were not integrated written instruments.  The 60 month right to preferential re-employment does not alter or contradict the Severance Agreements.  It is only an *additional term* of the parties' agreement. [*see Masterson v. Sine* (1968) 68 C2d 222, 225; *Bionghi v. Metropolitan Water Dist. of So. Calif.* (1999) 70 CA4th 1358, 1364; *Pacific State Bank v. Greene* (2003) 110 CA4th 375, 379; emphasis added]  The Severance Agreements were not a final expression of the parties' agreement.  Both parties understood that the 60 month right to preferential re-employment would be part of their agreement.

Even if Defendant PG & E claims that their written agreement was final and complete, it was only final and complete with respect to a particular term, rather than the agreement in its entirety.  In such a situation, the parol evidence rule bars extrinsic evidence *only as to those matters determined to be partially integrated.* [*see Masterson v. Sine* (1968) 68 C2d 222, 225; *see also Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, emphasis added]  Although

*Knowles & Hicks v. PG & E, et al.*                    16
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

parol evidence cannot be offered to *contradict* the terms of even a partially integrated writing [*Esbensen v. Userware Int'l, Inc.* (1992) 11 CA 4th 631, 638], "*extrinsic evidence may be used to prove elements of the agreement not reduced to writing.*" [*see Hayter Trucking, Inc. v. Shell Western E & P, Inc.* 18 CA4th 1, 14, emphasis added]

In *Casa Herrera, Inc. v. Beydoun* [(2004) 32 Cal.4[th] 336, 343] the Court found that the parol evidence rule "does *not prohibit* the introduction of extrinsic evidence to explain the meaning of a written contract if the meaning urged is one to which the written contract terms are reasonably susceptible." [*Id.*, emphasis added] The Court can consider whether the contract, considered in its entirety, is unduly conscionable. [*see Allan v. Snow Summit, Inc.* (1996) 51 C.A.4th 1375) Among the factors accorded great weight in determining whether the contract meets the adhering party's reasonable expectations is notice. Here, Plaintiffs were induced to enter the Severance Agreements because they were promised that they would get their 60 month right to re-employment. They did not enter into the agreements until such condition was met. Plaintiffs did not have the notice required because as far as they were concerned, their right to re-employment was guaranteed. [*Id.*]

After determining that a contract is an adhesion contract, analysis as to its enforceability is required. "[A] contract of adhesion is fully enforceable according to its terms [citations] *unless* certain other factors are present which, under established legal rules-legislative or judicial-operate to render it otherwise." [*Id., quoting from Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 819-820, emphasis added] Factors which may preclude enforcement of an adhesion contract are as follows: First, when the contract "does not fall within the *reasonable expectations* of the weaker or 'adhering' party [Plaintiffs], and, even if it does, second-a principle of equity applicable to all contracts generally, when the contract is, considered in its context, ... *unduly oppressive or 'unconscionable.*'" [*Id., quoting from Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 819-820, emphasis added] The Severance Agreements were adhesion contracts that left Plaintiffs without the requisite notice or reasonable expectations that they were entitled to receive. The Agreements' "release of all known and unknown claims" is unduly oppressive and unconscionable.

California Civil Code § 1542 states in its entirety: "A general release *does not extend* to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her

*Knowles & Hicks v. PG & E, et al.*                    17
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

settlement with the debtor." (emphasis added)  Here, Plaintiffs were promised a 60 month right to re-employment and justifiably relied on such agreement when they entered into the Severance Agreements.  The "release of all known *and unknown* claims" clause does not extend to claims that Plaintiffs did not know or suspect to exist at the time of executing the release.  At that point, Plaintiffs believed that they were already receiving the 60 month right to re-employment, so any "release of all claims" related to other benefits or claims, not their right to re-employment.

The mere use of the phrase "unknown claims" in a release does not itself suffice to discharge unknown claims; rather, there must be evidence apart from the words of the release to indicate the parties intended to cover unknown claims. [*see Casey v. Proctor* (1963) 59 C2d 97, 109–113] Even an enforceable release is subject to ordinary contract defenses, such as lack of consideration, lack of mutual assent, fraud, or undue influence.  A release may also be ruled unenforceable to the extent the alleged releaser (Plaintiffs) were under a misapprehension, not due to their own neglect, as to the nature and scope of the release, and this misapprehension was induced by misconduct of the releasee (PG & E). [*see Casey v. Proctor* (1963) 59 Cal.2d 97, 103; *see also Raynale v. Yellow Cab Co.*, 115 Cal. App. 90 (fraud); *Meyer v. Haas*, 126 Cal. 560 (misrepresentation as to the contends of the release); *Mairo v. Yellow Cab Co.*, 208 Cal.350; *M. G. Chamberlain & Co. v. Simpson*, 173 Cal.App.2d 263, 276 (deception); *Jordan v. Guerra*, 23 Cal.2d 469 ('overreaching')]  Here, Plaintiffs are claiming fraud, malice, and oppression against Defendant PG & E.

Defendant PG & E's agreement is unconscionable and one-sided.  Read literally, it prevents Plaintiffs from ever challenging the agreement, even if Plaintiffs do not receive what they were promised in the agreement since any challenge or dispute to the agreement is suddenly a "breach."  Such circular and self-serving wording is unconscionable and fails to provide Plaintiffs with notice.  Plaintiffs were induced to enter into the Severance Agreements because they were orally promised that they would receive the 60 month right to re-employment just like all of the power generation employees.  This was because for all purposes of the divestiture, they were treated as power generation employees.  Initially, they did not receive the 60 month right to re-employment and because of that, they did not sign the Severance Agreements.  Once such right was eventually given, they agreed to sign the Agreements.

*Knowles & Hicks v. PG & E, et al.*                    18
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

As discussed above, not all terms of the parties' agreement were reduced to writing. The issue of the Plaintiffs' right to re-employment is silent in the Severance Agreements. It was orally promised to Plaintiffs prior to entering into the Severance Agreements, and Plaintiffs should be permitted to prove such agreement before a trier of fact. Such ruling is improper at this point in the action, before any discovery has commenced, in a Motion to Dismiss. The determination of the facts and circumstances of this case should not be left up to the trier of fact, not decided by a Motion to Dismiss.

## IV. CONCLUSION

Based on the foregoing, as well as the procedural history of this action, Plaintiffs respectfully request that the Court deny Defendant PG & E's motion to vacate the arbitrator's interim award and deny Defendant PG & E's request to stay the arbitration.

Respectfully Submitted,

Dated: March 17, 2008                       BECK LAW, P.C.

By: _____

Mahsa Gholami, Esq.
Attorney for Plaintiffs

*Knowles & Hicks v. PG & E, et al.*                19
United States District Court Case No.: CV-08-1211-TEH
Plaintiffs' Opposition to Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

**EXHIBIT A**

**Pacific Gas and
Electric Company**®

OCT 1 3 2006

Darren P. Roach          77 Beale Street, B30A
Attorney at Law          San Francisco, CA 94105

*Mailing Address:*
P. O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

October 11, 2006

VIA FACSIMILE 707.576.1878 AND
US MAIL

Daniel Beck, Esq.
BECK LAW P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

Re:    Knowles and Hicks v. Pacific Gas and Electric Company, et al.

Dear Mr. Beck:

PG&E is in receipt of a civil action filed on behalf of plaintiffs Thomas Knowles and Thomas
Hicks in San Francisco Superior Court. The core of the civil action alleges PG&E breached
contractual obligations regarding promised employment benefits, including potential preferential
rights to reemployment.

PG&E is initiating communication because this civil action is in violation of severance
agreements executed by Knowles and Hicks. As part of a lay off in 2001, both former
employees were offered, accepted, and executed severance agreements in which, in exchange for
certain promises, they each received a severance sum in excess of $50,000. In exchange for this
sum, Knowles and Hicks agreed to several promises, including the following:

- The agreement resolved any dispute between the employees and PG&E with respect to their
  employment and severance there from.
- They agreed to release and hold harmless PG&E and its employees from all claims relating
  to their employment. This included a release of claims for discrimination. The agreement
  contained an express waiver of any rights under California Civil Code section 1542.
- They agreed not to initiate any lawsuit or proceeding against PG&E. They also agreed that
  any dispute regarding any aspect of the agreement shall be resolved through contractual
  arbitration.
- Plaintiffs agreed to repay the severance settlement sum in the case of a material breach of the
  agreement.

By initiating a civil action, Knowles and Hicks are in violation of a material term of the
severance agreements.



Daniel Beck, Esq.
October 11, 2006
Page 2

PG&E's position is that these claims are without merit, but if they are pursued at all then plaintiffs exclusive remedy is arbitration, not a civil action. If they choose to maintain this action, PG&E will seek costs associated with having to defend a civil action, and will exercise its rights to demand return of all severance sums paid to Knowles and Hicks. For your reference, copies of the severance agreements are attached. Please call at your earliest convenience to discuss this issue.

Very truly yours,

Darren P. Roach

DPR/as

Enclosures

*CALENDARED*
*10/31/06*



**Pacific Gas and
Electric Company**

Darren P. Roach          77 Beale Street, B30A
Attorney at Law          San Francisco, CA 94105

Mailing Address:
P. O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

October 11, 2006                    VIA FACSIMILE 707.576.1878,
                                    ELECTRONIC MAIL,
                                    AND US MAIL

Mahsa Gholami, Esq.
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

     Re:    Knowles and Hicks v. Pacific Gas and Electric Company, et al.

Dear Ms. Gholami:

This will confirm our discussions of October 16, 2006. Plaintiffs indicated receipt of copies of severance agreements, and they are considering PG&E's request to dismiss with prejudice all claims in the civil complaint and to submit the claims to contractual arbitration.

While plaintiffs are considering this request, they will provide PG&E an extension of time to respond to the civil complaint. The parties agree that PG&E's response is currently due on October 31, 2006.

Thank you for your cooperation, and I look forward to a timely response regarding contractual arbitration. Please contact me immediately if you believe there are any misunderstandings are reached in this letter.

Very truly yours,

Darren P. Roach

DPR

Enclosures

**PG&E**

*Pacific Gas and Electric Company®*

Darren P. Roach    77 Beale Street, 830A
Attorney at Law    San Francisco, CA 94105

*Mailing Address:*
P. O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

October 16, 2006                           VIA FACSIMILE 707.576.1878,

Mahsa Gholami, Esq.
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA. 95403

Re:    Knowles and Hicks v. Pacific Gas and Electric Company, et al.

Dear Ms. Gholami:

PG&E's current understanding is that plaintiffs are conferring regarding a response to the request to voluntary dismiss with prejudice all claims and, if desired, to submit those claims to contractual arbitration. PG&E requests a conference with you on Monday to discuss plaintiffs' decision, so that PG&E has time to prepare and file petition to compel arbitration, if necessary. Thank you for your continued cooperation.

Very truly yours,

Darren P. Roach

DPR



**Pacific Gas and
Electric Company**®



Darren P. Roach    77 Beale Street, B30A
Attorney at Law    San Francisco, CA 94105

Mailing Address:
P O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

October 16, 2006                          VIA FIRST CLASS MAIL

Mahsa Gholami, Esq.
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

    Re:   Knowles and Hicks v. Pacific Gas and Electric Company, et al.

Dear Ms. Gholami:

This letter serves as notice that, should plaintiffs fail to agree to dismiss the civil claims with prejudice and to submit any claims to arbitration, PG&E will file a motion to dismiss and a petition to compel arbitration. 9 U.S.C. §4.

Very truly yours,

Darren P. Roach

DPR/as

Enclosure: Proof of Service

CERTIFICATE OF SERVICE BY MAIL – FEDERAL

I, the undersigned, state that I am a resident of the United States and am employed in the City and County of San Francisco; I am over the age of eighteen (18) years and not a party to the within cause; my business address is 77 Beale Street, San Francisco, California 94105; I am familiar with the practice of Pacific Gas and Electric Company ("PG&E") for the collection and processing of items for mailing; in the ordinary course of business such items would be deposited with the United States Postal Service that same day; and on the date set out below true copies of the following:

**CORRESPONDENCE DATED OCTOBER 16, 2006,**
**REGARDING SERVE NOTICE OF INTENTO TO FILE**
**MOTION TO DISMISS AND COMPEL ARBITRATION**

were sealed in envelopes, addressed as follows, and placed for collection and mailing on that date following PG&E's ordinary business practices:

Mahsa Gholami
BECK LAW, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed October 16, 2006 at San Francisco, California.

ANNABEL STRIPLIN

**EXHIBIT B**

*Agreement*

Between

# PACIFIC GAS AND ELECTRIC COMPANY



# LOCAL UNION NUMBER 1245 OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS



*Affiliated with*
AMERICAN FEDERATION OF LABOR
CONGRESS OF INDUSTRIAL ORGANIZATIONS

APPLYING TO
**OPERATION, MAINTENANCE AND CONSTRUCTION EMPLOYEES**

EFFECTIVE JANUARY 1, 2000

If Ad Hoc Negotiations are agreed upon within the time periods provided, the Committee will meet and confer at the earliest date that can be arranged between them. The Committee will meet thereafter as often as both parties deem necessary to effect an early disposition of the issues involved. The Committee is empowered to render a final, binding disposition of the case. Such decision will be reduced to writing, signed by both Union and Company, and distributed by each to Union members and Company's management as each deems necessary to effectuate the decision.

If an Ad Hoc Negotiating Committee is unable to reach a disposition of the "suspended" case within 180 days of the date the case was suspended, and if within that period of time neither party has notified the other in writing of their intent to submit said case to arbitration, then at the expiration of said 180 days, the case shall be automatically closed without prejudice, unless there is mutual agreement that the case be terminated by other means.

While "suspended," the preliminary disposition proposed by either party may, upon mutual agreement of the parties, be placed into effect anywhere without prejudice to either party. If both have submitted preliminary dispositions that provide for different methods of resolving the issues, either or both may, by mutual agreement, be put into effect for the purpose of determining which, if either, is mutually acceptable to the parties as a solution.

To provide a favorable atmosphere for negotiating a settlement of the issue referred to an Ad Hoc Negotiating Committee and to encourage the trial of preliminary dispositions proposed by either Company or Union, the period of "suspension" will insulate Company from additional monetary liability, if that is involved in the case, in the following manner: The Ad Hoc Negotiating Committee is empowered to mutually determine in an appropriate case, the amount of retroactive wage adjustment which will accompany its disposition of the case. In no event, however, will such period of retroactive wage adjustment exceed the period of time beginning with the date the grievance was originally filed and ending with the 30th calendar day following the date the Union notifies Company of their election to "suspend."

The period of suspension shall end, and the insulation of Company of further liability shall cease whenever either party notifies the other of its desire to submit the case to arbitration.

(5) Referral to arbitration.

(6) Withdrawal of the grievance by Union without prejudice.

(v)     Unless the parties mutually agree in writing to the waiver of the applicable time limitation in any specific instance, the failure to strictly comply with the time limits provided above shall result in:

(1) Granting, at the option of the Union, of the correction sought by the grievance if Company does not submit its "Preliminary Disposition" within the time limits set forth in Item (ii) of this Part B, or

(2) The closure of the case without adjustment and without prejudice.

(vi)     Either party may request a Review Committee hearing. Such hearing will be scheduled at the earliest time possible, but shall not delay or extend the running of time limits set forth in Part B of this Procedure.

**STEP *FIVE*** (Title Amended 1-1-00)

**ARBITRATION**

A.     **TRIPARTITE BOARD**

Either Company or Union may request, within the time limits provided in the foregoing steps, that a grievance which is not settled at one of the steps provided above be submitted to arbitration.

An Arbitration Board shall be appointed on each occasion that a grievance is timely submitted to arbitration pursuant to the foregoing provisions of this Title. The board shall be composed of two members appointed by Company, two members appointed by Union, and a fifth member appointed pursuant to the procedure set forth in the following Subsection B. Such fifth member shall act as Chairman of the Arbitration Board and conduct hearings and render a decision in accordance with the appropriate Submission Agreement.

B.     **SELECTION PROCEDURE**

The parties to an arbitration proceeding will make a good faith effort to mutually agree to the selection of the Chairman. If they cannot, each party shall nominate two candidates from the panel established by Company and Union, Subsection C. If the parties are still unable to agree upon the selection of a Chairman, then the Chairman shall be chosen by lot from the panel names submitted.

C.    PANEL OF ARBITRATORS

A panel of not more than ten arbitrators shall be established and renewed annually by the Company and the Union on January 1 of that year. Each party shall have the right to name five panelists who will remain on the panel during the calendar year.

## 102.7    INDIVIDUAL DISPUTE ADJUSTMENT

Pursuant to the provisions of Subsection 9(a) of the Labor Management Relations Act of 1949, as last amended, no provision of this Title shall be construed to restrict or prohibit an individual employee or group of employees from presenting disputes to Company and to have such disputes adjusted without the intervention of Union, provided that the adjustment shall not be inconsistent with the terms of this Agreement, and that Union shall be given an opportunity to be present at such adjustment. (Amended 1-1-91)

An employee's election under this Section shall not preclude the employee's later consenting to Union's filing a grievance on his/her behalf if the employee is not satisfied with the results. Such grievance, however, must be filed within the time limits provided in Section 102.3, and such time limits are not delayed or suspended by the grievant's original choice to pursue the dispute without Union's intervention. (Amended 1-1-91)

Unless the employee consents to Union's later filing of a timely grievance, the procedures and grievance "steps" set forth in the foregoing Sections of this Title are not available to the employee.

## 102.8    ENABLING CLAUSE

By written agreement between Company and Union, other provisions may be substituted for or added to the provisions of this Title.

## 102.9    ATTACHMENTS

In addition to the provisions of Section 105.5 of this Agreement, the Master Apprenticeship Agreement, the Benefit Agreements, Training Agreements, and other special agreements that may be executed from time to time under Section 102.8, the provisions of this Title shall also include the following attachments which are set out elsewhere in this Agreement.

(a)    Continuing Grievances

(b)    (Deleted 1-1-94)

(Entire Title Amended 1-1-80)

### Attachment A

### LABOR AGREEMENT INTERPRETATION

SUBJECT:    Retroactive Wage Adjustment -- Continuing Grievances

SECTION 102.2 - Physical Agreement
SECTION 9.2 - Clerical Agreement

For the purpose of determining the extent of a retroactive wage adjustment resulting from the submission of a continuing grievance timely filed under the applicable provisions of Section 102.2 or 9.2, the following procedure will be observed. For this purpose, a "continuing grievance" is defined as a continuing course of conduct allegedly in violation of the Labor Agreement as opposed to a single isolated and completed transaction.

1.    The period of retroactive wage adjustment shall not exceed thirty (30) calendar days prior to the date of filing such grievance in writing in the form and manner prescribed by Section 102.2 or 9.2, whichever is applicable, unless

2.    It can be established that sometime prior to filing the grievance, as provided above, the grievant requested his or her supervisor to make the same correction, during the period of that continuing course of conduct, and a supervisor of grievant, who is authorized to make the correction, had declined to do so. The period of retroactive wage adjustment in this case (or an adjustment made pursuant to the provisions of Section 102.7 or 9.7) shall commence with the date it can be established that grievant made such request. In either event, however, if the request was made within thirty (30) calendar days of the day the alleged violation first occurred, the adjustment shall commence with the first day the violation occurred.

**PROOF OF SERVICE**

| CASE NAME | Thomas Knowles and Thomas Hicks v. Pacific Gas and Electric Company, Deanna Radford, and Does 1 - 20 |
|---|---|
| CASE NO. | CV-08-1211-TEH |
| DOCUMENT NAME | Proof of Service to Plaintiffs' Opposition to Defendant Pacific Gas & Electric's Motion to Vacate Arbitrator's Interim Award and to Stay Arbitration; Memorandum of Points & Authorities in Support of Opposition |

I declare as follows: I am over the age of 18 years and not a party to the above-entitled action or proceeding; that my business name and address is:  BECK LAW, P.C., 2681 Cleveland Ave., Santa Rosa, CA 95403.

On March 17, 2008, I caused to be served said document on the following parties involved as follows:

| | |
|---|---|
| Darren P. Roach, Esq.<br>Pacific Gas and Electric Company<br>Post Office Box 7442 B30A<br>San Francisco, CA 94120<br>(415) 973-5531, fax | |
| Lafayette & Kumagai, LLP<br>Susan T. Kumagai<br>100 Spear Street, Suite 600<br>San Francisco, CA  94105<br>(415) 357-4605 Fax | |

☒    VIA FACSIMILE TRANSMISSION (CCP §1013)

☒    BY MAIL:  I caused each such envelope above, with postage thereon fully prepaid, to be placed in the United States mail at Santa Rosa, California. (CCP §1013(a)(1)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 14, 2008, in Santa Rosa, CA.

_Kimala Krchnavi_
**Kimala Krchnavi**

1

1    Daniel B. Beck, Esq. (SBN: 63865)
       Mahsa Gholami, Esq. (SBN: 235634)
2    BECK LAW, P.C.
       2681 Cleveland Avenue
3    Santa Rosa, CA 95403
       Telephone:  (707) 576-7175
4    Facsimile:   (707) 576-1878

5    Attorneys for Plaintiffs,
       Thomas Knowles and Thomas Hicks
6

7

8                   **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10

11   THOMAS KNOWLES and THOMAS HICKS,     Case No.:  CV-08-1211-TEH

12             Plaintiffs,          **[PROPOSED] ORDER RE:
                                         DEFENDANT PACIFIC GAS AND
13   v.                             ELECTRIC'S MOTION TO VACATE
                                         ARBITRATOR'S INTERIM AWARD
14   PACIFIC GAS & ELECTRIC COMPANY,    AND TO STAY ARBITRATION**
       DEANNA RADFORD, and DOES 1-20.
15
              Defendants.         Date: April 7, 2008
16                                    Time: 10:00 a.m.
                                    Dept.: 12, 19th Floor
17                                    Judge: Hon. Thelton E. Henderson

18

19   DEFENDANT PACIFIC GAS & ELECTRIC COMPANY'S Notice of Motion and Motion to

20   Vacate Arbitrator's Interim Award and to Stay Arbitration came on regularly before this Court.

21

22   After reviewing the moving papers and hearing oral arguments,

23   The Court DENIES Defendant's Motion to Vacate Arbitrator's Interim Award.

24   Furthermore, the Court DENIES Defendant's Request for Stay of the Arbitration.

25

26

27   Dated: _____        _____

28                                          Honorable Thelton E. Henderson
                                         Judge of the Northern District Court

*Knowles & Hicks v. PG & E, et al.*                        1
United States District Court Case No.: CV-08-1211-TEH
[Proposed] Order RE: Defendant's Motion to Vacate Arbitrator's
Interim Award and to Stay Arbitration

**PROOF OF SERVICE**

| CASE NAME | Thomas Knowles and Thomas Hicks v. Pacific Gas and Electric Company, Deanna Radford, and Does 1 - 20 |
|---|---|
| CASE NO. | CV-08-1211-TEH |
| DOCUMENT NAME | Proof of Service to Plaintiffs' [Proposed] Order Re: Defendant Pacific Gas & Electric's Motion to Vacate Arbitrator's Interim Award and to Stay Arbitration |

I declare as follows: I am over the age of 18 years and not a party to the above-entitled action or proceeding; that my business name and address is: BECK LAW, P.C., 2681 Cleveland Ave., Santa Rosa, CA 95403.

On March 17, 2008, I caused to be served said document on the following parties involved as follows:

| Darren P. Roach, Esq.<br>Pacific Gas and Electric Company<br>Post Office Box 7442 B30A<br>San Francisco, CA 94120<br>(415) 973-5531, fax | |
|---|---|
| Lafayette & Kumagai, LLP<br>Susan T. Kumagai<br>100 Spear Street, Suite 600<br>San Francisco, CA 94105<br>(415) 357-4605 Fax | |

☒    VIA FACSIMILE TRANSMISSION (CCP §1013)

☒    BY MAIL: I caused each such envelope above, with postage thereon fully prepaid, to be placed in the United States mail at Santa Rosa, California. (CCP §1013(a)(1)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 14, 2008, in Santa Rosa, CA.

*Kimala Krchnavi*

**Kimala Krchnavi**

1